UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| ROGER LYNN MOLLETT,<br><br>    **Plaintiff,**<br><br>V.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    **Defendant.** | CIVIL ACTION NO. 7:14-cv-128-KKC<br><br><br>**MEMORANDUM<br>OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment. (DE 10; DE 11). Plaintiff Roger Lynn Mollett brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief of an administrative decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI"). The Court having reviewed the record will affirm the Commissioner's decision as it is supported by substantial evidence and was decided by the proper legal standards.

## I. OVERVIEW OF THE PROCESS

The Social Security Act and corresponding regulations provide a five-step sequential process for determining whether a claimant has a compensable disability. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an

> impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)). If, at any step in the process, the administrative law judge ("ALJ") concludes that the claimant is or is not disabled, then the ALJ can complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof through the first four steps of the analysis; and, at step five, the burden shifts to the Commissioner. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). The claimant must, in order to satisfy his burden of proof, provide sufficient facts to find in his favor. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Mollett filed his claim for SSI on May 19, 2011, alleging an onset date of December 31, 2005. (Tr. at 160.) The agency denied his application initially and on reconsideration. (Tr. at 68, 82.) Mollett requested review by an ALJ, and the ALJ held a hearing on May 20, 2013. (Tr. at 46–61.) The ALJ subsequently issued an unfavorable decision on June 19, 2013. (Tr. at 32–39.)

At the time the ALJ rendered his decision, Mollett was fifty-nine years old. He has an eighth-grade education and previously worked as a laborer in a septic tank factory and in the coal-mining industry. (Tr. at 34, 49.) The vocational expert ("VE") characterized Mollett's past work as "heavy, semi-skilled." (Tr. at 56.) Mollett alleges disability because of "[b]ack problems, breathing problems, hearing, [and] legs." (Tr. at 63.)

At the first step, the ALJ determined that Mollett has not engaged in substantial gainful activity since May 19, 2011, Mollett's application date. (Tr. at 34.) At the second step, the ALJ found that Mollett suffers from the following severe impairments: "degenerative joint disease of the spine and arms and hearing loss[.]" (Tr. at 34.) The ALJ concluded that the other alleged impairments were not supported by treatment records and that, with respect to the other alleged impairments, "[t]he examinations by the consultative examiners were normal." (Tr. at 34–35.) At the third step, the ALJ determined that Mollett does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. at 35.)

Then, the ALJ reviewed the record to determine Mollett's residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. § 404.1545(a)(1). In finding Mollett's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) additional treatment; (6) additional measures used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions

due to symptoms. 20 C.F.R. § 416.929; SSR 96-4p, 1996 WL 374187 (July 2, 1996); SSR 96-7p, 1996 WL 374186 (July 2, 1996). The ALJ also considered the relationship between Mollett and the doctors providing medical opinions; the supportability and consistency of the medical opinions with the entire record evidence; medical specialization; and other opinion evidence. 20 C.F.R. § 416.927; SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006); SSR 96-2p, 1996 WL 374188 (July 2, 1996); SSR 96-5p, 1996 WL 374183 (July 2, 1996); SSR 96-6p, 1996 WL 374180 (July 2, 1996).

After reviewing all the record evidence, the ALJ concluded that Mollett has the following RFC:

> He can lift/carry 21 to 50 pounds occasionally and 11 to 20 pounds frequently; sit, stand, and walk six hours each out of an eight-hour workday. He can not work in cold [*sic*] extreme cold temperatures; no work in moderate noise environment; and no work at heights or around open machinery. He can frequently use both hands and arms for reaching, handling, fingering, feeling, pushing, or pulling; frequently use legs for operation of foot controls to weight limits; frequently climb stairs, ramps, ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, or crawl; and frequently work at humidity, wetness, dust, odors, fumes, extreme hot temperatures, and subjecting body to vibration.

(Tr. at 35.) The ALJ determined that Mollett's ALJ fell within the range of "medium work as defined in 20 CFR 416.967(c)." (Tr. at 35.) The ALJ continued to the fourth step. The ALJ asked the VE whether Mollett could perform his past work. (Tr. at 57.) The VE testified that Mollett could not perform his past work and that he could not transfer any skills he attained for his past work. (Tr. at 57.) The ALJ moved to the fifth step and asked the VE a hypothetical question. (Tr. at 56–58.) The ALJ's hypothetical question was based on an individual with Mollett's RFC, and the ALJ asked if such an individual—who also had Mollett's age, education, and work background—could perform other jobs available in

4

the regional or national economy. (Tr. at 57.) The VE stated that such an individual could perform "at least 50 percent of the medium, 65 percent of the light, and at least 60 percent of the sedentary" jobs in the regional and national economy. (Tr. at 58.) The ALJ asked the VE for specific examples of jobs that, in the VE's opinion, Mollett could perform, and the VE stated that a hypothetical individual with Mollett's age, education, and work background could perform the following jobs: produce sorter; production worker; light cleaning positions; laundry worker; product grader, sorter, and selector; and machine monitor. (Tr. at 58.) Therefore, the ALJ found Mollett not disabled. (Tr. at 39.)

The ALJ's decision that Mollett was not disabled from December 31, 2005 through June 19, 2013 became the final decision of the Commissioner when the Appeals Commission subsequently denied Mollett's request for review on July 22, 2014. (Tr. at 1–3.) Mollett has exhausted his administrative remedies and filed a timely action in this Court. This case in now ripe for review under 42 U.S.C. § 405(g).

### III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). "'The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision[ ]makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence

would have supported an opposite decision.'" *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

## IV. ANALYSIS

Mollett presents the following issues for review: (1) he asserts that the ALJ's second step analysis is inconsistent with the ALJ's RFC determination; and (2) he claims that the ALJ's fifth step analysis failed to incorporate limitations associated with Mollett's lack of educational attainment. (DE 10-1 Pl.'s Mem. at 1–6.)

> 1. *The ALJ's residual functional capacity determination is not inconsistent with the ALJ's findings that Mollett has degenerative joint disease of the spine and arms and hearing loss.*

If an ALJ finds that a claimant has a severe impairment(s) at the second step of the five-step process for determining disability, then the ALJ must determine a claimant's residual ability to work, or RFC. A claimant's RFC "is the most [a claimant] can do despite [the claimant's] limitations . . . [and is] based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). RFC is "not [a] medical issue[ ] regarding the nature and severity of an individual's impairment(s) but [is an] *administrative finding*[ ] . . . that [directs] the determination or decision of disability." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) (emphasis added).

To determine a claimant's RFC, the ALJ assesses all "relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Relevant medical evidence includes "any statements about what [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examination." *Id.* Other relevant, non-medical evidence includes "descriptions and observations of [a claimant's] limitations from [a claimant's] impairment(s), including limitations that result from [a claimant's] symptoms, such as pain, provided by [a claimant], [a claimant's] family, neighbors, friends, or other

persons." *Id.* "However, statements about [a claimant's] pain or other symptoms will not alone establish that [a claimant] is disabled; *there must be medical signs and laboratory findings* which show that [a claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 1529(a) (emphasis added). "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

Therefore, an ALJ must determine whether a claimant's statements about pain or other symptoms and its functional effects are credible based on an evaluation of all the record evidence. *See id.* "The [ALJ's] determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the [claimant's] statements and the reasons for that weight. *Id.*, at *2.

Mollett asserts that the ALJ should have credited his statements about the pain associated with these severe impairments and its functional effects. (DE 10-1 Pl.'s Mem. at 4–5.) He argues that the ALJ's RFC determination is inconsistent with the ALJ's conclusion that he suffers from degenerative joint disease and hearing loss and his statements concerning the functional effects of those impairments. (DE 10-1 Pl.'s Mem. at 4–5.)

Here at the ALJ's RFC determination, the ALJ summarized all of the record medical evidence from every examining physician. (Tr. at 36.) Then, the ALJ compared all of Mollett's statements concerning the functional effects of his impairments with other record

7

evidence. (Tr. at 36–37.) The ALJ noted that record evidence directly contradicted many of Mollett's alleged functional limitations. For example, the ALJ stated that the "claimant reported in a questionnaire that he does not do any yard work and his physical abilities are limited (Exhibit 10E). However, he testified that he uses a weed eater at time. Further, the claimant is able to cook, clean his home, shop, and take care of his pets." (Tr. at 37.) The ALJ also observed that the "claimant reported severe back pain. Yet, the claimant does not take any prescription pain medications and there is no record of treatment for pain." (Tr. at 37.) Finally, the ALJ noted that the "claimant reported severe shortness of breath and chest pain. Yet, the medical record shows no [medical evidence] or treatments for such impairments." (Tr. at 37.) Therefore, the ALJ "conclude[d] that the claimant's allegations of disabling impairments are deemed excessive, not fully credible and are treated accordingly." (Tr. at 37.)

The ALJ properly evaluated all relevant medical and other evidence. *See* 20 C.F.R. § 404.1545(a)(3). Then, the ALJ made a specific credibility finding for Mollett's statements and detailed his rationale for the finding of credibility. *See* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Hence, the ALJ properly determined Mollett's RFC because the ALJ analyzed all record evidence, compared Mollett's alleged limitations to the medical signs and laboratory findings, and established the weight to give to Mollett's statements about his pain and its functional effects. *See Rabbers*, 582 F.3d at 652–53 (noting that an ALJ will always find a claimant's RFC *after* determining that a claimant suffers from one or more severe impairments and that the conclusion that a claimant suffers from a severe impairment, without completing the five-step analysis, does not establish a claimant's disability under the Social Security Act).

8

Overall, the ALJ's RFC determination is not inconsistent with Mollett's severe impairments, and the ALJ's treatment of Mollett's statements about his pain and its functional effects is supported by substantial evidence and applies the correct legal standards. *See Gayheart*, 710 F.3d at 375–76.

> 2. *The Commissioner's decision that Mollett can adjust to other work included any limitations associated with Mollett's lack of educational attainment.*

At the fifth step in the five-step process for evaluating disability, the Commissioner considers a claimant's RFC, age, education, and work experience to determine whether a claimant can make an adjustment to other work. 20 C.F.R. § 1520(a)(4)(v). To meet this burden, the Commissioner must make a finding supported by substantial evidence that the claimant can perform specific jobs in the regional and national economy. *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 507–08 (6th Cir. 2014) (citing *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [a claimant's] individual physical and mental impairments." *Varley*, 820 F.2d at 779 (internal quotations omitted). In preparing a hypothetical question, the ALJ is tasked with providing the VE an RFC based on an evaluation of the medical evidence that establishes physical and mental impairment, and the VE is tasked with properly assessing a claimant's age, work experience, and educational attainment. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The VE then uses the ALJ's RFC analysis with the VE's determination of the claimant's age, experience, and education to evaluate whether there exist a significant number of employment opportunities for the claimant in the regional and national economy. *Id.*

9

Mollett claims that the Commissioner did not consider his lack of educational attainment is evaluating what, if any, jobs he could perform in the regional and national economy because the ALJ did not describe Mollett's level of education in the hypothetical question to the VE. (DE 10-1 Pl.'s Mem. at 5–6.) Mollett, however, confuses the roles of the ALJ and the VE at the fifth step.

Here, the ALJ provided the VE with a hypothetical question that adequately portrayed Mollet's RFC. (*Compare* Tr. at 56–57, *with* Tr. at 35.) The VE established Mollett's age, work experience, and educational attainment. (*See* Tr. at 57.) Then, the VE used this information to determine whether Mollett could perform jobs in the regional and national economy. (*See* Tr. at 57–58.) The VE concluded that Mollett could perform numerous jobs, including "at least 50 percent of the medium, 65 percent of the light, and at least 60 percent of the sedentary work" in the regional and national economy. (Tr. at 58.) The VE also provided the ALJ with two specific examples of jobs that Mollett could perform at each exertional level. (Tr. at 58.)

Therefore, the ALJ properly performed his role of adequately describing the physical and mental impairments that the VE must consider, and the VE properly performed her role of evaluating the claimant's age, experience, and education. (*Compare* Tr. at 56–58, *with Webb*, 368 F.3d at 633.) Accordingly, the Commissioner's conclusion that Mollett could make an adjustment to other work is supported by substantial evidence and applies the correct legal standards. *See Gayheart*, 710 F.3d at 375–76.

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Plaintiff's motion for summary judgment (DE 10) is **DENIED**;
2. The Commissioner's motion for summary judgment (DE 11) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously.

Dated August 26, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY